*If this opinion indicates that it is "FOR PUBLICATION," it is subject to revision until final publication in the Michigan Appeals Reports.*

# STATE OF MICHIGAN

# COURT OF APPEALS

*In re* PETERS, Minors.

UNPUBLISHED
August 10, 2023

No. 363366
Alcona Circuit Court
Family Division
LC No. 19-002715-NA

*In re* PETERS, Minors.

No. 363368
Alcona Circuit Court
Family Division
LC No. 19-002715-NA

Before: REDFORD, P.J., and K. F. KELLY and RICK, JJ.

PER CURIAM.

In Docket No. 363366, respondent-mother appeals by right the trial court's order terminating her parental rights to her two minor children, FP and AP. In Docket No. 363368, respondent-father appeals by right the same order, under which the court also terminated his parental rights to the two children. Because the trial court failed to comply with MCR 3.971 when it took respondents' pleas of admission during the adjudicatory phase, we vacate the trial court's orders of adjudication and order terminating respondents' parental rights and remand for further proceedings.

## I. BASIC FACTS AND PROCEDURAL HISTORY

The court took jurisdiction over FP in January 2020 on the basis of pleas of admission by respondents.[1] Respondents admitted to living in a home whose level of uncleanliness posed a

---

[1] As will be explained in more detail below, when taking the pleas from respondents, the trial court never advised respondents of their rights as required under MCR 3.971(B)(3) and (4).

hazard to FP, who was an infant (at this time, AP had not yet been born).[2]  Upon birth, FP was found to have pustules covering her body and were speculated to be the result of respondent-mother's exposure to filth and animal feces.  Amy Kuzbiel, a child protective services worker, testified that respondents' home posed a health hazard to FP because there were over seven dogs in the home, filth "all over the place," the home had an extremely strong odor of animal feces and ammonia, and there was a lot of debris on the floor.  Kuzbiel witnessed a dog urinating on the floor, and a "muddy mop" had been used to push the urine under ripped linoleum.

Although respondents would eventually move out of the home into an apartment, the problems with cleanliness persisted.  Shortly after moving in to the apartment, caseworkers observed animal feces on the walls, which respondents claimed was from the previous tenant.  Observation of the apartment a month later, however, revealed that the feces was still on the walls.  At the termination hearing, Erika Rice, a caseworker with petitioner Department of Health and Human Services, stated that she had visited respondents' apartment and the floor was littered with choking hazards such as pennies, old food, plastic bags, and cords.  A litter box was within the reach of a child.

At the hearing, respondent-mother admitted that it would not be in the children's best interests to come into the home the way it "currently" was.  And respondent-father stated that he could not say why respondents failed to keep their home clean and said that he "[p]robably . . . didn't prioritize" the cleaning.  Respondent-father said that the current home could be appropriately clean in 30 days, but he admitted that he did not know if respondents were going to be able to maintain cleanliness with both children in the home and with both respondents having jobs.

Ultimately, the trial court terminated respondents' parental rights to FP and AP.  Although the court stated that statutory grounds for termination existed, it did not identify the grounds under which it was terminating respondents' rights.  This appeal followed.

## I.  DOCKET NO. 363368

In Docket No. 363368, respondent-father argues that the trial court erred when it found there to be statutory grounds for termination because respondents had rectified the conditions that led to removal.  We disagree.

## A.  STANDARDS OF REVIEW

"This Court reviews for clear error the trial court's factual findings and ultimate determinations on the statutory grounds for termination."  *In re White*, 303 Mich App 701, 709-710; 846 NW2d 61 (2014) (citations omitted).  "A finding of fact is clearly erroneous if the reviewing court has a definite and firm conviction that a mistake has been committed, giving due regard to the trial court's special opportunity to observe the witnesses."  *In re BZ*, 264 Mich App

Although there have been some changes to MCR 3.971 since the plea involving FP, the relevant portions of the court rule were the same at the time of that plea.

[2] The trial court later took jurisdiction over AP in December 2021 after he was born.

286, 296–297; 690 NW2d 505 (2004). "A reviewing court must defer to the special ability of the trial court to judge the credibility of witnesses." *In re LaFrance*, 306 Mich App 713, 723; 858 NW2d 143 (2014).

## B. ANALYSIS

"To terminate parental rights, a trial court must find that at least one of the statutory grounds for termination in MCL 712A.19b(3) has been proved by clear and convincing evidence." *In re Brown/Kindle/Muhammad*, 305 Mich App 623, 635; 853 NW2d 459 (2014) (quotation marks and citation omitted). Although the trial court did not specify under which statutory grounds it granted the petition—merely stating that "there is a statutory ground for terminating parental rights here"—petitioner sought termination under MCL 712A.19b(3)(c)(*i*) (conditions which led to adjudication continue to exist and are unlikely to be rectified within reasonable time); (c)(*ii*) (failure to rectify other conditions); (g) (failure to provide proper care or custody and no reasonable expectation of such care or custody within reasonable time); and (j) (reasonable likelihood that child will be harmed if returned to parent). Respondent-father asserts that the court relied on subdivision (c)(*i*) and contends that this reliance was inappropriate. We disagree.

Under MCL 712A.19b(3)(c)(*i*), the trial court may terminate a respondent's parental rights if the court finds by clear and convincing evidence that:

> (c) The parent was a respondent in a proceeding brought under this chapter, 182 or more days have elapsed since the issuance of an initial dispositional order, and the court, by clear and convincing evidence, finds . . . the following:

> (*i*) The conditions that led to the adjudication continue to exist and there is no reasonable likelihood that the conditions will be rectified within a reasonable time considering the child's age.

It was not clear error for the trial court to terminate respondents' parental rights under MCL 712A.19b(3)(c)(*i*). The conditions leading to adjudication were unclean and unsanitary conditions posing a risk of harm to the children. By the time of the termination hearing, over 182 days had passed since the initial dispositional orders for both FP and AP. At the termination hearing, Erika Rice stated that she had visited respondents' apartment the day before. She said that the floor was littered with choking hazards such as pennies, old food, plastic bags, cords, and a litter box with animal droppings. Crucially, respondent-mother admitted during the termination hearing that it would not be in the children's best interests to live in the home the way it currently was. And respondent-father stated he did not prioritize cleaning and did not know if respondents were going to be able to maintain a level of cleanliness appropriate for the children.

Respondent contends it was error for the court to consider the initial conditions in his mother-in-law's home before moving to the apartment, but it was appropriate for the court to do so, given that this is where respondents had been living when the court took jurisdiction over FP and where respondents planned to raise their children. Respondent-father also contends that not enough reunification efforts were offered, but the record contradicts that assertion showing that petitioner provide ample services to the family, including access to early care specialists, parenting classes, and in-home assistance.

Accordingly, the trial court did not clearly err when it terminated respondents' parental rights because the conditions that led to the children's removal—unsanitary conditions that posed a risk to the health of the children—continued to exist at the time of the termination hearing.[3] However, as will be explained below, vacating the trial court's termination order is required because respondents' adjudicative pleas were defective.

## II. DOCKET NO. 363366

In Docket No. 363366, respondent-mother argues the trial court plainly erred when it failed to advise her of her right to have a trial and an appeal, and failed to ensure that her admissions were free and voluntary. We agree and, because the same issue was present for respondent-father's plea, we vacate the trial court's orders with respect to both respondents.

## A. STANDARDS OF REVIEW

Respondent-mother did not raise the issue of her defective plea in the trial court and has, therefore, failed to preserve the issue for appeal. See *In re Utrera*, 281 Mich App 1, 8; 761 NW2d 253 (2008). For reversal to be warranted, a respondent must establish that (1) an error occurred; (2) the error was plain, i.e., clear or obvious; and (3) the plain error affected his or her substantial rights. *In re Ferranti*, 504 Mich 1, 29; 934 NW2d 610 (2019). Additionally, "the error must have seriously affect[ed] the fairness, integrity or public reputation" of judicial proceedings. *Id.* (quotation marks and citations omitted).

## B. ANALYSIS

Once a trial court authorizes a petition to take jurisdiction over a minor child, the trial court "can exercise jurisdiction [over the child] if a respondent parent enters a plea of admission or no contest to the allegations in the petition . . . ." *Id.* at 15. Pleas of admission are governed by MCR 3.971, which requires that the trial court "must advise the respondent on the record":

> (1) of the allegations in the petition;
>
> (2) of the right to an attorney, if respondent is without an attorney;

---

[3] Respondent-father also argues the trial court's decision to terminate respondents' parental rights was erroneous because the court failed to consider placement with relatives as an alternative to foster care. Although respondent contends that there may have been other relatives that were available to take custody of the children, he does not identify those relatives or show in the record where those relatives were addressed with the trial court. See *In re TK*, 306 Mich App 698, 712; 859 NW2d 208 (2014) ("A party cannot simply assert an error or announce a position and then leave it to this Court to discover and rationalize the basis for [her] claims, or unravel and elaborate for [her her] argument, and then search for authority either to sustain or reject [her] position.") (quotation marks and citation omitted; alteration in original).

-4-

(3) that, if the court accepts the plea, the respondent will give up the rights to

(a) trial by a judge or trial by a jury,

(b) have the petitioner prove the allegations in the petition by a preponderance of the evidence,

(c) have witnesses against the respondent appear and testify under oath at the trial,

(d) cross-examine witnesses, and

(e) have the court subpoena any witnesses the respondent believes could give testimony in the respondent's favor;

(4) of the consequences of the plea, including that the plea can later be used as evidence in a proceeding to terminate parental rights if the respondent is a parent.

(5) if parental rights are subsequently terminated, the obligation to support the child will continue until a court of competent jurisdiction modifies or terminates the obligation, an order of adoption is entered, or the child is emancipated by operation of law. Failure to provide required notice under this subsection does not affect the obligation imposed by law or otherwise establish a remedy or cause of action on behalf of the parent;

(6) that appellate review is available to challenge any errors in the adjudicatory process, which may be challenged in an appeal from the court's initial order of disposition;

(7) that an indigent respondent is entitled to appointment of an attorney to represent the respondent on any appeal as of right and to preparation of transcripts; and

(8) the respondent may be barred from challenging the assumption of jurisdiction in an appeal from an order terminating parental rights if they do not timely file an appeal of the initial dispositional order under MCR 7.204 or a delayed appeal under MCR 3.993(C). [MCR 3.971(B).]

In *In re Ferranti*, 504 Mich at 14, the respondents challenged a defective plea that occurred during the termination of their parental rights. During a preadjudication status conference, the respondents made certain admissions allowing the trial court to take jurisdiction over the child. When taking the pleas from respondents, "the court did not advise them that they were waiving any rights. Nor did the court advise them of the consequences of their pleas, as required by our court rules." *Id.* at 10. The respondents argued that as a result of the trial court's failure to advise them of their rights, their pleas were not knowingly and voluntarily made. *Id.* at 20.

Reviewing the claims under the plain error doctrine, the Michigan Supreme Court concluded that the failure to properly advise the respondents constituted plain error affecting substantial rights:

> Due process and our court rules require a trial court to advise respondents-parents of the rights that they will waive by their plea and the consequences that may flow from it. The court erred by failing to advise these respondents of the consequences of their pleas and the rights they were giving up; those errors were plain.
>
> * * *
>
> But the Department believes that the errors did not affect the respondents' substantial rights because it would have been able to prove the allegations had the case proceeded to an adjudication trial. This misses the point; the constitutional deficiencies here are not forgiven by what might have transpired at trial. The respondents' pleas were not knowingly, understandingly, and voluntarily made. [*Id*. at 30.]

The Court reasoned that "the invalid pleas relieved the Department of its burden to prove that the respondents were unfit at a jury trial, with all of its due-process protections." *Id*. As a result, the error "seriously affected the fairness, integrity, or public reputation of judicial proceedings." *Id*. at 31. The Michigan Supreme Court explained that the failure of the trial court "resulted in the respondents' constitutionally defective pleas and undermined the foundation of the rest of the proceedings. . . . Due process requires more: either a plea hearing that comports with due process and the court rule or, if respondents choose, a trial." *Id*. at 31.

In *In re Pederson*, 331 Mich App 445, 466; 951 NW2d 704 (2020), the trial court failed to advise the respondents that their plea could be used against them in a later proceeding to terminate parental rights, as required by MCR 3.971(B)(4). Despite the error by the trial court, this Court affirmed the trial court's order terminating the respondents' parental rights, stating respondents "failed to carry their burden of demonstrating that the adjudicatory error . . . was outcome-determinative." *In re Pederson*, 331 Mich App at 466. Distinguishing the case from *In re Ferranti*, the Court stated:

> Respondents in this case only take issue with the fact that the trial court failed to advise them that their pleas could "later be used as evidence in a proceeding to terminate parental rights" as required by MCR 3.971(B)(4). Thus, unlike the parents in *In re Ferranti*, respondents in this case were informed of most of the rights that they were waiving, including their rights to a trial by judge or jury, to have witnesses against them appear, and to subpoena witnesses. [*In re Pederson*, 331 Mich App at 467-468.]

The Court emphasized that, in contrast with the advice of rights in MCR 3.971(B)(4), the advice of rights under MCR 3.971(B)(3) "are particularly important because they directly relate to the adjudicative stage of the child-protective proceeding," which is a "critical stage." *In re Pederson*, 331 Mich App at 467. But the Court concluded that the mere failure to inform the

respondents that the pleas could later be used against them in a termination proceeding, see MCR 3.971(B)(4), did not require reversal since it was not outcome-determinative. *Id.* at 467-471.

In contrast with *In re Pederson*, here the court below did not comply with MCR 3.971(B)(4) or MCR 3.971(B)(3). Respondents were not informed that they had a right to (1) a trial; (2) have the petitioner prove the allegations by a preponderance of the evidence; (3) have witness appear and testify; (4) cross-examine witnesses; and (5) have the court subpoena witnesses to testify on their behalf. Nor were respondents informed that in exchange for making the pleas of admission, that they were giving up these rights. And lastly, respondents were not informed that the plea could be later used against them or that they had the right to appellate review. This case is materially indistinguishable from *In re Ferranti* and we are, therefore, compelled by precedent to vacate the trial court's order of termination as well as the trial court's order exercising jurisdiction over the minor children. And although respondent-father does not raise the issue in his brief to this Court, because his pleas of admission were similarly defective, this ruling applies to the proceedings against him as well. Lastly, because jurisdiction over AP, who was born after the plea hearing at issue, was based almost entirely on the fact that the court already had jurisdiction over FP, we vacate the trial court's orders with respect to AP as well. See *In re Ferranti*, 504 Mich at 31 (stating that defects in the advice of rights "undermined the foundation of the rest of the proceedings.").[4]

The trial court's orders of adjudication and termination are vacated and remanded for further proceedings consistent with this opinion. We do not retain jurisdiction.

/s/ James Robert Redford
/s/ Kirsten Frank Kelly
/s/ Michelle M. Rick

---

[4] In her brief to the Court, respondent-mother also argues that the trial court erred because it did not inquire into respondents' Native American heritage. While the record supports her claim that the trial court failed to inquire about Native American heritage, she presented no evidence to the trial court or this Court that anyone in the family is of that nationality. Respondent-mother cannot show at this stage, therefore, that the trial court's failure was outcome-determinative. See *In re Ferranti*, 504 Mich at 29; *In re Pederson*, 331 Mich App at 466. This may be addressed on remand.